UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CASEY FARLEY, SHAWN PRUETT, RICHARD ROA, OMAR PADILLA, MATTHEW KITRELL, RONALD BAKER, RANDALL ERICKSON, RICHARD ROA, KYLIE HODGES-FOOTE, SCOTT STONE, CHRISTOPHER HARDING, BERIN AYMON, KYLE LASATER, DENNIS PETERSON,<br><br>             Plaintiffs,<br><br>vs.<br><br>DIRECTOR JOSH TEWALT, CHAD PAGE, AMANDA GENTRY, JAY CHRISTENSEN, TIMOTHY McKAY, TYLER NICODEMUS, WARDEN RICHARDSON, LT. GIBNEY, MARK KUNBINSKI, and RACHAEL ALTIG,<br><br>             Defendants. | Case No. 1:21-cv-00409-BLW<br><br>**SECOND SUCCESSIVE SCREENING ORDER** |

Plaintiffs are prisoners in custody of the Idaho Department of Correction (IDOC), who reside in the close custody unit of the Idaho Maximum Security Institution (IMSI). They desire to have their claims joined as a class action. The Court earlier notified the parties that "after the Plaintiffs submit their amended complaints, the Court will reconsider the appropriate procedural vehicle for the claims." Initial Review Order, Dkt.

**SECOND SUCCESSIVE SCREENING ORDER - 1**

19, p. 1. The IMSI inmates who desire to proceed have submitted their Amended Complaints or notices to join.

## REVIEW OF SEVERANCE OF JODY CARR CLAIMS AND REASSIGNMENT REQUESTS IN AMENDED COMPLAINTS

Preliminarily, the Court must address the current Plaintiffs' questions why the similar claims of former plaintiff Jody Carr have been severed from this action and why he will not be permitted to participate in this action. Carr prepared and filed the initial Complaint in this matter for several different prisoners, and he drafted all of the Amended Complaints.

The first reason Carr's claims have been severed into a separate action is that some of his allegations and claims may violate a confidential "Global Settlement Agreement" (GSA) that Carr entered into in 2019 for the purpose of settling numerous cases with IDOC personnel. Whether Carr's current allegations violate the confidential GSA cannot be briefed or discussed among other parties, including the current Plaintiffs in this action. Carr agreed that he was not permitted to take certain actions as a result of the GSA. Carr recently has been found in violation of the GSA in Case No. 1:20-cv-00146-DCN (Dkt. 44, Sealed Order).

Second, Carr no longer resides at IMSI. He has been moved to a lower security classification, which he has requested many times. Therefore, he does not qualify to be a class representative for the IMSI close custody tier inmates' claims. If current Plaintiffs' claims qualify for class action status, the Court will appoint counsel, and counsel will nominate class representatives.

**SECOND SUCCESSIVE SCREENING ORDER - 2**

Third, Carr has a federal court history of inserting himself into other inmates' actions to assert speculative, exaggerated claims that were unauthorized by those inmates and to file multiple motions unauthorized by court order. To inform the remaining Plaintiffs of the reasons for the Court's concerns about Carr's actions in this matter, the Court provides the following instances from three of many other cases into which Carr has interjected himself:

**Case No. 1:20-cv-00059-BLW**

In Case No. 1:20-cv-00059-BLW (Case 59), the inmate asserted a straightforward Eighth Amendment medical care claim in a complaint. The inmate was permitted to proceed. Carr prepared a motion to amend the complaint, asserting that Defendants exhibited more than deliberate indifference toward the inmate's condition, intending to "murder" the inmate. Dkt. 21 p. 2, in Case 59.

Murder is an especially serious allegation. The Court issued the following warning to the plaintiff:

> Plaintiff has submitted a Motion to File an Amended Complaint and a proposed Amended Complaint. It is clear from the face and content of Plaintiff's recent filings that he has engaged the help of Jody Carr, a frequent pro se prisoner litigator in this Court, whose habit is to include allegations of conspiracy and murder in all of his own cases.
>
> Mr. Carr has recently "helped" several other prisoners amend their pleadings to assert that prison officials and medical professionals are conspiring against them and attempting to murder them. It is implausible that prison officials and medical professionals are engaged in so many conspiracies and that they have any motivation to "murder" prisoners—especially given that the common denominator in several recent lawsuits containing these allegations is Mr.

**SECOND SUCCESSIVE SCREENING ORDER - 3**

> Carr. Conclusory allegations that prison official defendants are trying to kill a prisoner, for example "by forcing him to work in extreme conditions despite his blood pressure condition," do not meet the *Iqbal/Twombly* standard and do not support a claim for "imminent harm" under 28 U.S.C. §1915(g). *See Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004).
>
> The intrusion of Mr. Carr into this litigation has caused Plaintiff to edge into the unfortunate category ranging from frivolous filers to vexatious litigants. Plaintiffs in this category often warrant imposition of restrictions on them to avoid their burying plausible constitutional issues under a mountain of frivolous and speculative allegations and to avoid their wasting of scarce public resources. Placing Plaintiff in that category is not fair to him, unless he continues in that vein after fair warning by the Court. This Order serves as that fair warning to Plaintiff.
>
> As to Mr. Carr, the Supreme Court of the United States has held that prisoners do not have a freestanding constitutional right to provide legal assistance to other inmates. *Shaw v. Murphy*, 532 U.S. 223 (2001). *In Johnson v. Avery*, 393 U.S. 483 (1969), the Supreme Court acknowledged that states "may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities." *Id*. at 490.
>
> Here, the Court will not permit Plaintiff to work with Mr. Carr in Plaintiff's case.
>
> That means Plaintiff should not seek legal advice from Carr, have Carr write out legal documents that Plaintiff can reprint in his own handwriting, or otherwise have Carr involved in this action. Plaintiff is free to seek the help of another prisoner if he is unable to pursue his litigation on his own.

Case 59, Dkt. 25, pp. 3-5.

**SECOND SUCCESSIVE SCREENING ORDER - 4**

In response to this letter, Jody Carr wrote a letter of apology to the Court. Case 59, Dkt. 27. Carr misrepresented the facts of his crime in his letter, asserting that he was serving a life sentence for first-degree murder *for an accident*, not mentioning his intentional act *after* the accident that caused the victim's death. *Compare* Case No. 1:20-00059-BLW, Dkt. 27, *with* Case No. 3:10-cv-00237-EJL, Dkt. 75, p. 2.

In response to the Court's Order permitting the inmate to file a new amended complaint without the "assistance" of Carr, the inmate submitted the following Declaration:

> I hereby state that inmate Jody Carr was the inmate who led me, and counseled me into filing the proposed amended complaint in this case.
>
> When the initial complaint was filed, and when this Court issued the initial review order, I was housed/incarcerated at the Idaho Maximum Security Institution.
>
> Eventually, I was moved to the Idaho State Corrections Center.
>
> Upon arrival at the Idaho Correctional Center, I was approached by inmate Jody Carr. Inmate Jody Carr asked me if I had any pending legal cases, and if I did, could he please read any Court orders.
>
> I allowed inmate Jody Carr to read my complaint and the Initial Review Order of this court.
>
> Inmate Jody Carr came back to my cell and told me that I was going to lose my cases, and that he could "fix" what was wrong with my case.
>
> I informed inmate Jody Carr that I felt I had very good cases and that the Court had not told me to correct anything.

**SECOND SUCCESSIVE SCREENING ORDER - 5**

> Inmate Jody Carr told me that he used to be an attorney, and that this Court regularly entered orders that allowed him to assist other inmates, and that at this point in time the Court had asked him to do a "class Action" legal suit.[1]
>
> It was based upon this that I allowed inmate Jody Carr to write an Amended Complaint.
>
> A few days later, inmate Jody Carr came into the cell door and told me, "hey we got to get this in the legal mail box, so just sign it and a copy will come back to you".
>
> I did as inmate Jody Carr asked, I signed the Amended Complaint, (I did not read it until it came back to me from the prison resource Center). I did not know that the Amended Complaint contained allegations of Murder, Conspiracy, and other items I am not in favor of, until after it was electronically filed.
>
> In June of 2020, Inmate [redacted], was transferred to the Idaho State Correction Center. I asked Inmate [redacted] to look at the Order of this Court dated June 8th, 2020.
>
> Inmate [redacted] was shocked by the Amended Complaint, and informed me that, "in his opinion, I needed to ask this Court to "strike from the case" the Amended Complaints because in his opinion, the allegations of the Amended Complaint were not correct, were going to "take away from," the facts of the original Complaint.
>
> At this time I also noticed that there were at least two, (2), and possibly three, (3), other inmates who had received orders from this Court which concerned inmate Jody Carr.

Case No. 20-59-BLW, Dkt. 31, pp. 3-4.

---

[1] None of these alleged representations of Jody Carr is true.

**SECOND SUCCESSIVE SCREENING ORDER - 6**

**Case 1:20-cv-00215-DCN**,

In Case 1:20-cv-00215-DCN (Case 215), Carr drafted and filed a complaint for another inmate. It contained unsupported allegations of widespread prison conspiracies against the inmate, without any factual support, similar to many of the complaints Carr has filed for himself and other inmates. The claims included:

- Plaintiff Wrote a PREA Complaint about Prisoner [redacted] that Defendant Deputy Warden McKay Covered up

- Defendant Frahs Failed to Intervene when Plaintiff Reported that Prisoner [redacted] Threatened Him after inmate Learned that Prison Officials Accused Plaintiff of Stealing inmate's Phone Time

- Christensen, McKay, and Anderson Retaliated against Plaintiff for Attempting to be a Co-Plaintiff in Prisoner Jody Carr's Class Action Lawsuit concerning Living Conditions on Tier D-1

- Sergeant Taylor Failed to Protect Plaintiff; Unknown Official's Failure to Protect Plaintiff

- Prison Officials Tried to Extort Plaintiff or Cover up Other Prison Staff Members' Extortion; Prison Officials Housed Plaintiff with Inmate [redacted] again, in Retaliation for Plaintiff's Exercise of First Amendment Activity

- Taylor, Dietz, and Christensen Failed to Protect Plaintiff; Prison Officials Housed Plaintiff with inmate [redacted] again in Retaliation for Plaintiff's Exercise of First Amendment Activity

- Prison Officials Hire Hit Man to Attack Plaintiff.

Case 215, Dkt. 3.

**SECOND SUCCESSIVE SCREENING ORDER - 7**

The Court severed the unrelated claims into three different complaints and required the inmate to provide further factual allegations to support each claim because of the vague and conclusory nature of the claims in the complaint. Dkt. 6 in Case 215.

In response, the inmate submitted a simple amended complaint asserting that several prison officials has personal participation in failing to protect him after he gave them notice of a particular threat by a particular inmate. Dkt. 7 in Case 215. He declared:

> The reason I had Mr. Carr write the original Complaint was because I have had one of my eyes surgically removed, and my other eye was damaged and swollen closed because of being attacked, at the time the Complaint was written). That was why I had asked Mr. Carr to help me. Once more, being totally honest, I did not read the original complaint before it was mailed to the Court.
>
> I am in the process of preparing, and filing an amended Complaint in this Court. The Amended Complaint should contain one or two, simple, concise, and direct allegations against three and possibly four of the named Defendants.
>
> Because I think that the original complaint made some allegations that I did not want to make, against certain Defendants, I would like to apologize to the Court for such a "mess" and for such confusion in the Original Complaint.
>
> My Proposed Amended Complaint will contain ONLY the allegation of a failure to protect, with a detailed affidavit as to what occurred, and what happened to me.
>
> Once more, I DO NOT WANT TO FILE AL OF THE OTHER COMPLAINTS. I believe that I was misled by the writer of the Original Complaint, and that fault lies only upon myself.
>
> And again, once more, I believe that I now have the help to correct what has happened, and I simply want to let the Court know that I am sorry for wasting the Court's time and valuable resources.

**SECOND SUCCESSIVE SCREENING ORDER - 8**

Dkt. 8, pp. 2-3, in Case 215.

### Case No. 1:19-cv-00427-BLW

In Case No. 1:19-cv-00427-BLW (Case 427), the inmate filed a complaint drafted by Carr (without the usual conspiracy and murder allegations), the Court permitted the inmate to proceed, and the Court issued the Standard Disclosure and Discovery Order. Dkts. 1, 6, 8 in Case 427. This case shows that the Court carefully reviews each document filed in each case on its own merits and does not reject documents simply because they were drafted by Carr. However, in the next stage of litigation for this inmate, Carr filed a barrage of discovery-related motions on behalf of the inmate. *See* Dkts. 31 to 37 in Case 427. The Court then issued the following Order.

> In the Initial Review Order, the Court ordered the parties to limit their motions to three pending motions at a time. (Dkt. 6, p. 11.) Plaintiff now has nine pending motions, many of which are repetitive discovery motions asking for the same documents, filed in disregard of the Standard Disclosure and Discovery Order (Dkt. 8) issued by the Court in conjunction with the Initial Review Order. The Court will strike all of Plaintiff's motions with the exception of the two motions to amend and the motion to appoint counsel (Dkts. 23, 39, 51). Plaintiff is warned that if he continues to disregard Orders, the Court will continue to strike his filings and may impose sanctions up to and including dismissal of his Complaint.
>
> Plaintiff is using another prisoner to help prepare his legal documents, which is permissible. However, that prisoner's name should not appear in Plaintiff's filings, such as asserting that the filings are being made "through" another prisoner, unless that prisoner is an Idaho-licensed attorney. Further, if the source of Plaintiff's frivolous motions—meaning motions that are without an adequate factual and/or legal basis—is his prisoner helper, Plaintiff may want to consider that the "help"

**SECOND SUCCESSIVE SCREENING ORDER - 9**

> is actually harming his case and his reputation as a litigant in this court.
>
> Beyond the frivolous filings—Plaintiff also has treated Defendants' counsel in a disrespectful manner. With no factual basis whatsoever, Plaintiff alleges by Affidavit (which means that it is a statement sworn to be true) that he should be appointed counsel because he is "handicapped in competing with trained and racist competent American counsel of the state." (Dkt. [39], p. 2.) Plaintiff shall refrain from making personal attacks that have no basis in fact, such as being "racist," in his court filings.
>
> The Court has inherent power to "'regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.'" *De Long v. Hennessey and Mansfield*, 912 F.2d 1144, 1147 (9th Cir. 1990) (quoting *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989)). Because of Plaintiff's abusive litigation tactics—which make it exceedingly difficult to get to the heart of the matter, which is whether Plaintiff is being denied essential medical care— the Court will impose a case management plan that must be followed, or Plaintiff will suffer consequences that match the degree of his disobedience to court orders. Further abusive tactics and prohibited filings may be cause for sanctions, up to and including, striking of Plaintiff's motions or responses, or dismissing the Complaint with prejudice.

Dkt. 56, pp. 2-3, in Case 427.

The inmate plaintiff responded:

> I want to say sorry for all the humiliation, to the defendant counsel, as well sorry for all the mistake, on all the motions in my defence I want to say that Inmate Jody Carr #79004 was the one that wrote everything that was send to the court and the defendant counsel.
>
> I myself have struggle to file all those document so this inmate offer himself to help me, and in return I gave him $60.00 dollar in his trust account and $0.00 dollar worth of woman photo's and woman catalog.

**SECOND SUCCESSIVE SCREENING ORDER - 10**

Dkt. 58, p. 2, in Case 427.

These examples provide Plaintiffs with the reasons behind the Court's questions in this case as to whether the allegations are those of each plaintiff and whether or to what extent the allegations are exaggerations that do not meet the Federal Rule of Civil Procedure Rule 11 standard for pleading. As shown above, a common thread in Carr's filings is exaggeration of factual allegations. A pleading that starts with exaggeration delays and obscures the entire case. The nature of exaggeration is that it leans into falsity. Baltasar Gracian, an eighteenth century philosopher, categorized exaggeration as "a branch of lying."[2]

Exaggeration not only weakens one's position, but it weakens one's credibility when it becomes habit. Since 2006, Carr has been asserting that officials in many different government positions have been trying to murder him. *See* Case 1:06-cv-00125-JLQ, *Carr v. Tousley et al.*, Dkt. 3, p. 14, 20, 32 (alleging that investigators of his crime and Twin Falls County Jail staff attempted to murder him, including by poisoning his food); Case No. 13-cv-00380-REB, *Carr v. Fleming, et al.*, Dkt. 9, p. 4 (alleging IDOC officials tried to murder him by poisoning his food); and Case No. 1:17-cv-00167-DCN, *Carr v. Zmuda, et al.*, Dkt. 3, p. 12 (alleging IDOC officials hired an assailant to murder him). Carr also asserted without other inmates' permission that IDOC officials were attempting to "murder" them. *See* Cases 59 and 215, above. For all of these reasons, it is

---

[2] Quotation attributed to *The Oracle, a Manual of the Art of Discretion*, commonly translated as *The Art of Worldly Wisdom.*

**SECOND SUCCESSIVE SCREENING ORDER - 11**

important for the Court to obtain more information about the conditions of confinement in IMSI close custody unit J-1, other than from Carr's pen.

On behalf each inmate, Carr wrote: "I desire the removal of Defendant Judge B. Lynn Winmill from this case as our Judge, and reconsideration and review of the motion requesting class status." *See* Dkt. 22, p. 2. Carr, on behalf of Casey Farley, states that there are "rumors that a Federal Judge (Winmill) threatens disciplinary actions and sends U.S. Marshals after any inmates that 'speak' to Carr about Legal Matters." *Id.*, p. 3. Unless Farley files a corrective notice in this action taking responsibility for those allegations, the Court will assume that this statement speaks for Carr, who drafted the Complaint, not Farley, who signed it. Federal Rule of Civil Procedure 11 provides for sanctions when allegations in court filings are based on rumors. *See Hawaii Reg'l Council of Carpenters v. Yoshimura*, No. CV 16-00198 ACK-KSC, 2016 WL 4745169, at *7 (D. Haw. Sept. 12, 2016) (allegations based on "unsubstantiated rumor" alone do not meet Rule 11 standard); *see also Gallagher v. Kopera*, 789 F. Supp. 277, 278 (N.D. Ill. 1992) (finding that allegations in the complaint based on rumors and hunches were improper under Rule 11).

There is no evidence that the "rumors" are true. The Court's warnings to litigants who have filed exaggerated or untrue allegations drafted by Carr are not threats of "disciplinary actions," as Carr alleges on behalf of Plaintiffs. Rather, they are the standard type of warnings of judicial sanctions that may be imposed in cases, "up to and including, striking of Plaintiff's motions or responses, or dismissing the Complaint with prejudice." *See* Dkt. 56, pp. 2-3, in Case 427. From these legitimate standard warnings

**SECOND SUCCESSIVE SCREENING ORDER - 12**

necessary to protect the scarce judicial resources in the District of Idaho, Carr has crafted and asserted on behalf of others a false allegation.

The Court has neither time nor desire nor reason to send the United States Marshal "after any inmates that 'speak' to Carr about Legal Matters," as Carr asserts. If inmates continue to file frivolous amendments or vexatious motions in their cases, no matter who has drafted them, they will be sanctioned by the Court in the case-specific manner described above in Cases 59 and 427, which does *not* involve the United States Marshal. This is yet another unsubstantiated rumor that is subject to Rule 11 sanctions.

A party seeking disqualification of a judge must file a "sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party...." 28 U.S.C. § 144. Such affidavit shall "state the facts and the reasons for the belief that bias or prejudice exists" and shall be made in good faith. *Id*.

Only after determining the legal sufficiency of a § 144 affidavit is a judge obligated to reassign the motion to another judge. *Toth v. Trans World Airlines, Inc*., 862 F.2d 1381, 1388 (9th Cir. 1988). A motion or affidavit lacks legal basis where "the alleged bias or prejudice did not arise from an extrajudicial source." *Id*. at 1387. In other words, where the "bias or prejudiced alleged arose from conduct during the judicial proceeding, … the motion and affidavit … [a]re legally insufficient." *Id*. at 1388.

Plaintiffs have come forward with nothing showing that reassignment or disqualification is warranted in this case. Disqualification is not required where vague allegations of bias and prejudice are asserted and where they arise from the adjudication

**SECOND SUCCESSIVE SCREENING ORDER - 13**

of this case or other cases Carr has been involved in. Such alleged errors are "the basis for appeal, not recusal." *In re Focus Media, Inc.*, 378 F.3d 916, 930 (9th Cir. 2004) (internal citation omitted), *superseded by bankruptcy statute on other grounds*.

In their motions, Plaintiffs cite only the fact that their class action status should be reconsidered. They (or Carr) failed to read the Initial Review Order, which said just that—"The Motion for Class Action Certification (Dkt. 5) is deemed MOOT. After the Plaintiffs submit their amended complaints, the Court will reconsider the appropriate procedural vehicle for the claims." Dkt. 20, p.10. The Court will not entertain a motion for disqualification based on "rumor"; even if it did, the "rumors" are based on alleged sanctions taken in judicial cases, which are the basis for appeal, not recusal.

The only exception that would require recusal based only court rulings is when a court's substantive rulings show that they were "products of deep-seated favoritism or antagonism that made fair judgment impossible." *In re Focus Media*, 378 F.3d at 930 (internal citation and punctuation omitted). *See Liteky v. United States*, 510 U.S. 540, 555 (1994)) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (emphasis in original)). The United States Supreme Court noted that this exception is to be applied "only in the rarest of circumstances when no extrajudicial source is involved." *Id.* at 555 (1994) (internal citation omitted). Plaintiffs have not pointed to any substantive ruling in this case that

**SECOND SUCCESSIVE SCREENING ORDER - 14**

meets this standard.

For the foregoing reasons, the Court concludes that Plaintiffs have failed to show conduct sufficient to raise a question about the Court's ability to impartially preside over Plaintiffs' case. For all of these reasons, the motion for reassignment or disqualification will be denied.

## REVIEW OF ALLEGATIONS OF AMENDED COMPLAINTS

Plaintiffs complain, and Defendants' responses to grievances admit, that IMSI is overcrowded and understaffed. *See* various Offender Concern Forms and Grievances attached to amended complaints. Whether the close custody housing at IMSI violates Eighth Amendment standards to the degree that Plaintiffs complain—or whether Carr has exaggerated the conditions, as he has in many other federal court filings—is in question.

Carr seems to assert that "double-celling" has a causal link to all of the violence that occurs in the J-1 close custody housing unit; however, only some of the claims in the Complaint have anything to do with "double-celling"; that is, the inmates seem to have been attacked by inmates who are not cellmates, and they seem to have been attacked in common areas, not in their cells. Regardless, if there is significant violence in the J-1 close custody housing unit that could be caused by overcrowding and/or understaffing, Plaintiffs will be permitted to proceed, but the "double-celled" description will not be a considered a factor that excludes any inmates in that Unit from being represented.

To aid in further screening and review of the class action request, the Court will order Defendants to provide a *Martinez* Report in response to the allegations in the

amended complaints.[3] Plaintiffs may file a response. The Court will then make a determination on how the case will proceed.

## ORDER

**IT IS ORDERED:**

1. The following Motions filed by Jody Carr, no longer a party to this case, are STRICKEN and must be asserted in his own case: Motion to Amend Complaint (Dkt. 35); Amended Complaint of Jody Carr (Dkt. 36); Motion for Preliminary Injunction (Dkt. 37); Notice of Change of Address (Dkt. 43), Motion to Join Judge David Nye as a Defendant (Dkt. 44); Motion to Fix this Case (Dkt. 45).

2. The parties' motions for reassignment or disqualification (contained in the Amended Complaints) are DENIED.

3. The Motions to Proceed in Forma Pauperis (Dkt. 23, 29, 34) are presently deemed MOOT, pending further review. The Court will revisit these motions based on the number of Plaintiffs who file Amended Complaints and whether class action status is granted.

---

[3] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), rather than dismissing the complaint or sending it out for service and an answer, the district court ordered prison officials to conduct an investigation of the incident to include an interrogation of those concerned. The transcripts of the interrogations and an explanation by the officials were to be provided to the court to enable it to decide the jurisdictional issues and make a screening determination under 28 U.S.C. § 1915(a). *Id*. at 319. The United States Court of Appeals for the Ninth Circuit approved the use of Martinez reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008), concluding that, "[a]s a permissible option within its broad discretion, a district court in an appropriate case can issue a Martinez-style order that is reasonably tailored to the pretrial needs of the district court to assess the case."

**SECOND SUCCESSIVE SCREENING ORDER - 16**

4. The case caption shall be amended to include only the following Plaintiffs who have filed amended complaints or requests to join the action: Casey Farley, Shawn Pruett, Richard Roa, Omar Padilla, Matthew Kitrell, Ronald Baker, Randall Erickson, Richard Roa, Kylie Hodges-Foote, Scott Stone, Christopher Harding, Berin Aymon, Kyle Lasater, and Dennis Peterson.

5. The claims of all former plaintiffs who did not file an amended complaint or a notice of joinder are DISMISSED without prejudice, and Plaintiffs Camron Belcher (pursuing claims in a separate action), Ryan Cunningham, Jeremy Brown, Mark Dixon, Nicholas Shuff, John Jones Jr., David Peters, Derek Sanders, Brent Messinger, Jordan Goeckner, Jeremy Wilkinson, Robert J. Sams, Chris Stewart, Karden Tullis, Andrew Perez, Gunner Weir, Cody Willard, Ignacio Auguilar Jr., terminated from this action. This does not affect these inmates' ability to become class members if a class action lawsuit is deemed appropriate.

6. The Clerk of Court shall serve, via the ECF system, a copy of this Order and Plaintiffs' Amended Complaints or Motions to Join (Dkts. 22, 24, 26, 28, 31, 32, 33, 34, 38, 39, 41, 42, 46, 47) with exhibits, on the following counsel on behalf of Defendants: **Karin Magnelli**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706.

7. The Clerk need not send a waiver of service of summons at this time, because the case remains in screening status.

**SECOND SUCCESSIVE SCREENING ORDER - 17**

8.  Counsel for Defendants are requested to make a limited appearance for the purpose of providing a Martinez report and any other relevant records. The Martinez report should be filed within **120 days** after entry of this Order.

9.  The Martinez report does not need to be in any particular format, but counsel can present the report in any organized manner that makes sense in response to the allegations of the Second Amended Complaint and this Order. Exhibits that implicate privacy or security concerns may be filed under seal or in camera, as may be appropriate. Exhibits filed in camera must be accompanied by a privilege or security log that is provided to Plaintiff.

10. Counsel for Defendants also may desire to address Plaintiffs' request for class action certification.

11. Plaintiffs shall file nothing further except for a response of no more than 15 pages (each) to Defendants' Martinez report within **21 days** after receiving the report. Each response should focus on facts, not legal theories, and each should focus on the plaintiff's own incidents and any incident of another inmate that the plaintiff witnesses. If any plaintiff desires to make changes or clarifications regarding the allegations in the original Amended Complaint that each signed, he may do so.

DATED: August 11, 2022

B. Lynn Winmill
U.S. District Court Judge